UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

**RICHARD ROSS**, **WILLIAM NEWELL,**
**GREGORY KIMBROUGH, ANDY RAVERT,**
**ADREAN SEJAS, JOHN COFFEY,** and
**DONALD LESTER**, individually and on behalf
of all others similarly situated,                           Case No. 3:14CV-44-R

                    Plaintiff,                           Hon. Thomas B. Russell

v.

**JACK RABBIT SERVICES, LLC**,
a Kentucky limited liability company;
**JACK RABBIT USA, LLC**, a Florida
limited liability company; **888 DISPATCHING**
**SERVICES, LLC**, a Florida limited liability
company; **MELISSA WEHRLE**, an individual;
**DAVID HAIN**, an individual; and **THEODORE**
**KAUFMAN**, an individual; jointly and severally,

                    Defendants.
_____/

## FIRST AMENDED COLLECTIVE AND CLASS
## ACTION COMPLAINT AND JURY DEMAND

      Plaintiffs Richard Ross, William Newell, Gregory Kimbrough, Andy Ravert, Adrean

Sejas, John Coffey, and Donald Lester (hereinafter "Plaintiffs") on behalf of themselves and all

others similarly situated, by and through their undersigned counsel, for their First Amended

Collective and Class Action Complaint against Defendants, allege as follows:

### INTRODUCTION

      This case concerns several Defendant roadside assistance companies (providing the

following services: tire changing, jump starts, fuel delivery, lockout services), Jack Rabbit

Services, LLC (hereinafter "Jack Rabbit Services") Jack Rabbit USA, LLC (hereinafter "Jack

Rabbit USA"), and 888 Dispatching Services, LLC (hereinafter collectively referred to as

"Defendants"), who intentionally misclassified Plaintiffs and all other members of the putative Class as independent contractors. Pursuant to this intentional misclassification scheme, Defendants willfully refused to pay a minimum wage; willfully refused to pay overtime; and reduced employee wages through unlawful deductions.

Plaintiffs, on behalf of themselves and other similarly situated roadside assistance technicians currently or formerly employed by Defendants, contend that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA") and numerous state wage and hour statutes by: (1) misclassifying roadside assistance technicians as independent contractors; (2) failing to pay roadside assistance technicians the minimum wage in violation of FLSA and state wage and hour laws; (3) knowingly suffering and permitting Plaintiffs and the putative Class members to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one-and-one half times their regular rate; (4) improperly reducing pay to Plaintiffs and the putative Class members through unlawful deductions; and (5) adopting and implementing employment policies which violate the FLSA and state wage and hour laws.

During the past three years, Defendants provided roadside assistance services to customers in at least 50 markets in multiple states across the United States including, but not limited to, locations in: Alabama, Arkansas, California, Florida, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, New Jersey, North Carolina, New York, Ohio, South Carolina, Texas, Virginia, and West Virginia.  The unlawful employment policies and pay practices that Defendants implemented across these locations are uniform, just as they would be at any chain restaurant.

Plaintiffs bring this collective and class action seeking damages, back pay, restitution,

liquidated damages, declaratory relief, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable, and equitable under the circumstances.

## JURISDICTION & VENUE

1.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims raise a federal question under the FLSA, 29 U.S.C. § 201, *et seq.*

2.      This Court has jurisdiction over this FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.      Defendants' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis.  Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

4.      Additionally, pursuant to Fed. R. Civ. P. 23 and in accordance with the laws of the following jurisdictions, the Named Plaintiffs bring this action on behalf of current and former roadside assistance technicians who worked for Defendants in Kansas, Kentucky, Maryland, New Jersey, North Carolina, Ohio, and West Virginia during the applicable statutory time period of each state.

5.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds

of the proposed Class members and Defendants are citizens of different states.

6.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## THE PARTIES

8.     Named Plaintiff, Richard Ross, is a resident of Pass Christian, Mississippi.  At all relevant times, Mr. Ross was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq*., and worked as a roadside assistance technician in Mississippi from July 2013 to November 2013. Mr. Ross executed and filed his consent to join form (*See* Dkt 1-1).

9.     Named Plaintiff, William Newell, is a resident of Lawrence, Kansas.  At all relevant times, Mr. Newell was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq*., and worked as a roadside assistance technician in Kansas from January 2011 to November August 2013.

10.     Named Plaintiff, Gregory Kimbrough, is a resident of Baltimore, Maryland.  At all relevant times, Mr. Kimbrough was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq*., and worked as a roadside assistance technician in Maryland from September 2012 to March 2013.

11.     Named Plaintiff, Andy Ravert, is a resident of North Arlington, New Jersey.  At all relevant times, Mr. Ravert was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq*., and worked as a roadside assistance technician in New Jersey from March 2014 to May 2014.

12.     Named Plaintiff, Adrean Sejas, is a resident of Charlotte, North Carolina.  At all relevant times, Mr. Sejas was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.*, and worked as a roadside assistance technician in North Carolina from February 2013 to April 2013.

13.     Named Plaintiff, John Coffey, is a resident of Milford, Ohio.  At all relevant times, Mr. Coffey was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.*, and worked as a roadside assistance technician in Ohio and Kentucky from June 2013 to August 2013 and again from January 2014 to March 2014.

14.     Named Plaintiff, Donald Lester, is a resident of Ceredo, West Virginia.  At all relevant times, Mr. Lester was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.*, and worked as a roadside assistance technician in West Virginia from October 2013 to May 2014.

15.     Like all other Class members, Plaintiffs were injured as follows: (1) they were misclassified as independent contractors; (2) as a result, they were not paid the wages (including overtime) to which they were entitled as employees; and (3) their pay was reduced by way of unlawful deductions, as described more fully below.

16.     Defendant Jack Rabbit Services, LLC is a Kentucky limited liability company with its principal place of business located in Louisville, Kentucky.

17.     Defendant Jack Rabbit USA, LLC is a Florida limited liability company with its principal place of business located in Pensacola, Florida.

18.     Defendant 888 Dispatching Services, LLC is a Florida limited liability company with its principal place of business located in South Carolina.

19.     Defendant David Hain is a resident of Kentucky and the Managing Member of

Jack Rabbit Services, LLC.

20.     Defendant Theodore Kaufman is a resident of Florida and the Managing Member of Jack Rabbit USA, LLC.   Mr. Kaufman is also the former Managing Member of 888 Dispatching Services, LLC.

21.     Defendant Melissa Wehrle is a resident of South Carolina and the current Managing Member of 888 Dispatching Services, LLC.

22.     Together, Defendants provide roadside assistance to customers including the following services: tire changing, jump starts, fuel delivery, lockout services.

23.     Defendants were directly involved in the decision to misclassify roadside assistance technicians as independent contractors rather than employees and to perpetuate and maintain this unlawful classification system.

24.     Defendants made the decision to misclassify their roadside assistance technicians as independent contractors in order to evade their statutory obligations under the wage and hour laws and to pad their profits.

25.     Defendants are joint employers of all potential Class members and, as such, are jointly and severally liable for any violations of the wage and hour laws set forth in this First Amended Collective and Class Action Complaint.

26.     Defendants conspired to commit the following unlawful acts: (1) misclassifying roadside assistance technicians as independent contractors; (2) failing to pay roadside assistance technicians the minimum wage in violation of FLSA and state wage and hour laws; (3) knowingly suffering and permitting Plaintiffs and the putative Class members to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one-and-one half times their regular rate; (4) improperly reducing pay to Plaintiffs and the putative Class

members through unlawful deductions; and (5) adopting and implementing employment policies which violate the FLSA and state wage and hour laws.

27.     Defendants knew or should have known the business model they developed and implemented was unlawful under applicable laws.   Nonetheless, Defendants continued to willfully engage in the violations described herein.

28.     At all relevant times, Defendants owned and operated a business enterprise engaged in interstate commerce utilizing goods moved in interstate commerce as defined in 29 U.S.C. § 203(s).

29.     Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), because they perform related activities through common control for a common business purpose.

30.     At all relevant times, Plaintiffs and the Class members were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

## FACTUAL ALLEGATIONS

31.     Defendants provide roadside assistance to customers including the following services: tire changing, jump starts, fuel delivery, lockout services.

32.     According to Jack Rabbit USA's promotional materials, Defendants serve 50 locations across the United States including, but not limited to locations in Alabama, Arkansas, California, Florida, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, North Carolina, New York, Ohio, South Carolina, Texas, Virginia and West Virginia. (*Exhibit A*).

33.     As a matter of common policy and practice, Defendants misclassify all of their roadside assistance technicians.

34.     Consistent with this common policy and practice, Plaintiffs and others similarly

situated were intentionally misclassified by Defendants as independent contractors.

35.     As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiffs and others similarly situated.

36.     Specifically, Defendants required Plaintiffs and others similarly situated to sign illegal and void "Independent Contractor Agreements" pursuant to which Plaintiffs and others similarly situated were not paid an hourly wage equal to the applicable minimum wage, were not paid overtime compensation at a rate of one and one-half times their regular rate, and were subject to improper pay reductions through "damage" deductions.

37.     Pursuant to Defendants' form Independent Contractor Agreement (a copy of which is attached as *Exhibit B*), Plaintiffs and others similarly situated were paid only the following amounts: $13.00 for service jobs/runs within Plaintiffs' standard geographic coverage areas; $6.00 for "gone on arrival jobs;" and $13.00 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside Plaintiffs' standard geographic coverage areas. (*Id*. at ¶ 9).

38.     Additionally, under the Independent Contractor Agreement, Plaintiffs and others similarly situated were held "solely responsible for all damages/injuries caused by him the customer or his/her vehicle while performing service …." (*Id.* at ¶ 11).

39.     Pursuant to Defendants' policies, Plaintiffs and others similarly situated routinely suffered improper pay deductions to account for: (1) alleged damage to customer vehicles; (2) alleged mileage miscalculations; and (3) alleged insurer refusal to pay mileage invoices exceeding certain distances.

40.     Plaintiffs and others similarly situated had no control over these improper deductions.

41.     Defendants required Plaintiffs and others similarly situated to be on call twenty-

four hours per day, seven days per week.

42.     In addition to "on call" time, Plaintiffs and others similarly situated routinely worked in excess of 70 hours per week.

43.     The FLSA applied to Plaintiffs and the Class members at all times during which they worked for Defendants.  No exceptions to the FLSA apply to Plaintiffs and the Class.

44.     Upon information and belief, Defendants employed hundreds of roadside assistance technicians throughout the relevant time period without paying a minimum wage or overtime pay, subjecting them to improper and unlawful pay deductions, and denying them the rights and benefits due an employee.

45.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiffs and similarly situated members of the putative Class.

46.     At all relevant times to this Complaint, the employment terms, conditions, and policies that applied to Plaintiffs were the same as those applied to other putative Class members who also worked as roadside assistance technicians for Defendants.

47.     Plaintiffs and members of the putative Class incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors, failing to pay them a minimum wage and overtime pay, and subjecting them to improper and unlawful pay deductions.

48.     Because Defendants failed to pay their employees proper wages, the putative Class members' income consisted solely of the following amounts: $13.00 for service jobs/runs within Plaintiffs' standard geographic coverage areas; $6.00 for "gone on arrival jobs;" and $13.00 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside

Plaintiffs' standard geographic coverage areas.

49.     Defendants' misclassification of Plaintiffs and other putative Class members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the Class as follows: (1) failing to pay roadside assistance technicians the minimum wage in violation of FLSA and state wage and hour laws; (2) knowingly suffering and permitting Plaintiff and the putative class members to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate; (3) improperly reducing pay to Class members through unlawful deductions; and (5) adopting and implementing employment policies which violate the FLSA and state wage and hour laws.

50.     Defendants' misclassification of Plaintiffs and those similarly situated was willful.

51.     Defendants knew or should have known that it was improper to classify Plaintiffs and putative Class members as independent contractors.

52.     Workers in the putative Class cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment.  Nor can workers in the Class agree to be paid less than the minimum wage.   Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempt to coerce workers in the Class to waive their statutory rights and elect to be treated as independent contractors.

53.     Any contract which attempts to have workers in the putative Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

54.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under FLSA is not the workers' election, subjective intent,

or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

55.     Under the applicable test, courts utilize the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determined by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

56.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Class members establishes economic dependence by the Class on Defendants and employee status.  Here, Plaintiffs and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment with Defendants.  The Class members are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the Class members are the basis for Defendants' business.  Defendants obtain the customers who seek out roadside assistance, and Defendants provide the workers who conduct the roadside assistance on behalf of Defendants.  Defendants retain pervasive control over the business operations as a whole, and the Class members.

### a.  Degree of Control Exercised by Defendants

57.     Plaintiffs and the other members of the putative Class do not exert control over

any meaningful part of Defendants' business operations and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other Class members.

58.     Plaintiffs and Class members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

59.     Defendants exercise the following significant control over the work conditions of Plaintiffs and others similarly situated:

    a.  Defendants require Plaintiffs and Class members to be on call twenty-four hours per day, seven days per week;

    b.  In addition to "on call" time, Defendants require Plaintiffs and Class members to routinely work in excess of 70 hours per week;

    c.  Defendants require Plaintiffs and Class members to begin traveling to each service job/run within five minutes of receiving the assignment;

    d.  Defendants pay Plaintiffs and Class members only the following amounts: $13.00 for service jobs/runs within Plaintiffs' standard geographic coverage area; $6.00 for "gone on arrival jobs;" and $13.00 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside Plaintiffs' standard geographic coverage areas. (*Exhibit C* at ¶ 9);

    e.  Defendants hold Plaintiffs and Class members "solely responsible for all damages/injuries caused by him the customer or his/her vehicle while performing service …." (*Id.* at ¶ 11);

    f.  Defendants subject Plaintiffs and Class members to improper pay deductions to account for: 1) alleged damage to customer vehicles; 2) alleged mileage miscalculations; and 3) alleged insurer refusal to pay mileage invoices exceeding certain distances;

    g.  Defendants direct Plaintiffs and Class members with respect to which service jobs/runs to perform and what types of service to provide;

    h.  Defendants require Plaintiffs and Class members to undergo and obtain

extensive roadside assistance training, education, and continuing education. (*Id.* at ¶ 3);

i.  Defendants require Plaintiffs and Class members to wear Defendants' uniform. (*Id.* at ¶ 4);

j.  Defendants require Plaintiffs and Class members to maintain signage on their vehicles that bore Defendants' name and logo. (*Id.* at ¶ 5);

k.  Defendants require Plaintiffs and Class members to use forms and invoices Defendants provided;

l.  Defendants determined the tools and equipment Plaintiffs and Class members have to use rather than allowing Plaintiffs and Class members to use their own judgment;

m.  Defendants require Plaintiffs and Class members to maintain and distribute Defendants' business cards:



n.  Defendants required Plaintiffs and Class members to deliver to Defendants all invoices and customer service reports within seven days of each service job/run. (*Id.* at ¶ 15);

o.  Defendants required Plaintiffs and Class members from performing any work or services for "any other roadside assistance provider" during the time they worked for Defendants. (*Id.* at ¶ 17); and

p.   Defendants required Plaintiffs and Class members to submit to Defendants' background, criminal, traffic, and credit screening. (*Id.* at ¶ 2).

**b.**   **Facts Establishing No Skill or Initiative of a Person in Business for Herself**

60.   Plaintiffs, like all Class members, did not exercise the skill and initiative of a person in business for herself or himself.

61.   Plaintiffs and Class members are not required to have any specialized or unusual skills to perform their job.   The skills utilized in performing roadside assistance are commensurate with those exercised by ordinary people.

62.   Plaintiffs, like all other Class members, did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they owned no enterprise, nor did they maintain a separate business structure or facility.

63.   Class members had no control over customers, nor did they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

64.   Defendants did not permit Plaintiffs or other Class members to hire or subcontract other qualified individuals to provide additional roadside assistance to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**c.**   **Facts Establishing Relative Investment**

65.   Plaintiffs and Class members' relative investment is minor when compared to the investment made by Defendants.

66.   Plaintiffs and Class members make no financial investment in Defendants'

facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belongs to Defendants.

67.     Plaintiffs' and Class members' investment was limited to fuel and amounts paid to Defendants for signage, uniforms and tools. Absent Defendants' investment and provision of the business, the roadside assistance technicians would not earn anything.

> **d.     Facts Establishing Opportunity for Profit and Loss**

68.     Defendants managed all aspects of the business operations, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling the staff.  Defendants provided all necessary capital to open and operate the business.

69.     Neither Plaintiffs nor Class members had responsibility for any aspect of Defendants' ongoing business risk.

> **e.     Facts Establishing Permanency**

70.     Named Plaintiffs worked for Defendants as roadside assistance technicians in Defendants' respective assigned coverage areas during the applicable statutory period.  Many of them worked for Defendants for years.

> **f.     Facts Establishing Class Members Are an Integral Part of Employer's Business**

71.     Plaintiff and Class members are critical to Defendants' success.  Defendants' operation is wholly dependent on the roadside assistance services Class members provide for customers.

72.     The primary "product" or "good" Defendants are in business to sell consists of roadside assistance services provided by members of the Class.

73.      Members of the Class, like Plaintiffs, are economically dependent on Defendants

and subject to significant control by Defendants.

      **g.**    **Facts Establishing That Defendants' Acts Were Willful**

74.    All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

75.    Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiffs and Class members were misclassified as independent contractors.

76.    Roadside assistance technicians working under conditions similar to those employed with Defendants have been determined by courts to be employees—not independent contractors—in other FLSA cases.

77.    Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify roadside assistance technicians like Plaintiffs and similarly situated Class members, failed to pay them minimum wage in violation of FLSA, knowingly suffered and permitted them to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate, and improperly reduced their pay through unlawful deductions. Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

78.    Plaintiffs and all Class members suffered harm, injury, and damage, including financial loss, as a result of Defendants' conduct complained of herein.

79.    Plaintiffs and the Class members were entitled a minimum wage and overtime pay for their work performed for Defendants. Further, Defendants were not allowed to make improper and unlawful deductions from Plaintiffs' and Class members' pay.  By failing to pay

Plaintiffs and the Class members a minimum wage and overtime pay and interfering with their right to retain all of their earnings, Defendants injured Plaintiffs and the Class members and caused them financial loss, harm, injury, and damage.

## COLLECTIVE ACTION ALLEGATIONS

80.    Plaintiffs bring Counts I and II of this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of all similarly situated current and former workers of Defendants who were subject to Defendants' illegal misclassification scheme at any time during the last three years.

81.    Excluded from the Class are all of Defendants' executives, administrators, professional employees, and outside sales persons.

82.    A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are "similarly situated" to the Named Plaintiffs.

83.    The workers Plaintiffs seek to represent in this case include:

*All roadside assistance technicians who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.*

84.    The putative Class members are similarly situated to the Named Plaintiffs because they worked in the same or similar positions, were subjected to the same unlawful practices, policies, or plans, and their claims are based upon the same factual and legal theories.

85.    The working relationships between Defendants and every putative Class member are exactly the same and differ only in name and location. The key legal issue in the collective action—whether Defendants' classification policy and practice violates the FLSA—does not vary substantially from Class member to Class member.

86.     Plaintiffs estimate the Class, including both current and former workers over the relevant three-year period, will include approximately 1,000 members.  The precise number of Class members should be readily discernible from a review of Defendants' records.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings Counts III – X of this action as a class action pursuant to Federal Rule of Civil Procedure 23.

88.     Named Plaintiffs bring this action individually and as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter the "Classes"):

**The Kansas Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of Kansas and were misclassified by Defendants as independent contractors at any time in the past three years.*

**The Kentucky Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of Kentucky and were misclassified by Defendants as independent contractors at any time in the past three years.*

**The Maryland Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of Maryland and were misclassified by Defendants as independent contractors at any time in the past three years.*

**The New Jersey Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of New Jersey and were misclassified by Defendants as independent contractors at any time in the past three years.*

**The North Carolina Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of North Carolina and were misclassified by Defendants as independent contractors at any time in the past three years.*

**The Ohio Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of Ohio and were misclassified by Defendants as independent contractors at any time in the past three years.*

**The West Virginia Class is defined as follows:**

> *All roadside assistance technicians who worked for Defendants in the State of West Virginia and were misclassified by Defendants as independent contractors at any time in the past three years.*

89.     All requirements of Federal Rule of Civil Procedure 23 are satisfied to maintain a class action.

90.     The individuals in the Classes are so numerous that joinder of all members is impracticable.  While the exact number of Class members has not been determined at this time, upon information and belief, Defendants have employed approximately 1,000 Class members during the relevant time period.  Plaintiffs and members of the Rule 23 Classes have been equally affected by Defendants' violations of law.

91.     There are questions of law and fact common to the Classes that predominate over any questions affecting individual members, including, but not limited to:

    a.  Whether Defendants violated the rights of Plaintiffs and the Class by routinely subjecting them to improper pay deductions to account for: 1) alleged damage to customer vehicles; 2) alleged mileage miscalculations; and 3) alleged insurer refusal to pay mileage invoices exceeding certain distances;

    b.  The amount of damages, restitution, and/or other relief (including all applicable civil penalties, liquidated damages, and equitable relief available to which Plaintiffs and

the Class members are entitled); and

c.   Whether Defendants should be enjoined from such violations in the future.

92.   Plaintiffs' claims are typical of those of the Class.  Plaintiffs, like other members of the Classes, were subjected to Defendants' policies and willful practices of improper pay deductions to account for: (1) alleged damage to customer vehicles; (2) alleged mileage miscalculations; and (3) alleged insurer refusal to pay mileage invoices exceeding certain distances.  Plaintiffs and members of the Rule 23 Class have sustained similar injuries as a result of the Defendants' actions.

93.   Plaintiffs are adequate representatives of their respective Classes.  Plaintiffs retained counsel experienced in complex wage and hour cases and collective/class action litigation.

94.   Plaintiffs are members of their respective Classes. Given Plaintiffs' injuries and losses, Plaintiffs are committed to the prosecution of this action for the benefit of the Classes.

95.   Plaintiffs have no interest that would them to act adversely to the best interests of the class action litigation. This action is maintainable as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants.

96.   This action is maintainable as a class action because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes and because a class action is superior to other methods for the fair and efficient adjudication of this action.

97.   The Class Representatives intend to send notice to all members of the Rule 23

Classes to the extent required by the Federal Rules of Civil Procedure.

## COUNT I – VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages)
### (Against all Defendants)

98.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein**.**

99.     This claim arises out of Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for failure to pay Plaintiffs and members of the putative Class the minimum wage to which they were entitled.

100.    At all times relevant to this action, Defendants were "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

101.    At all times relevant to this action, Plaintiffs and the Class members were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

102.    At relevant times, all Defendants jointly employed Plaintiffs and all similarly situated Class members within the meaning of the FLSA.

103.    At all relevant times, Defendants were engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201.

104.    The minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants and protect Plaintiffs and members of the putative Class.

105.    Plaintiffs consented in writing to join this action pursuant to 29 U.S.C. § 216(b).

106.    Pursuant to 29 U.S.C. § 206, Plaintiffs and the Class were entitled to be compensated at the rate of $7.25 per hour beginning July 24, 2010.

107.    Defendants failed to pay Plaintiffs and Class members the minimum wage set forth in 29 U.S.C. § 206.

108.     Defendants failed to pay Class members a minimum wage throughout the relevant time period because Defendants intentionally misclassified them as independent contractors.

109.     Based on the foregoing, Plaintiffs and the Class members are entitled to the full statutory minimum wage set forth in 29 U.S.C. § 206 for all periods in which Plaintiffs worked for Defendants, along with all applicable penalties, liquidated damages, and other relief.

110.     Defendants' conduct in misclassifying Plaintiffs and Class members as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiffs and Class members were legally entitled to receive as employees.

111.     Plaintiffs, on behalf of themselves and the Class, seek damages in the amount of their respective unpaid wages, liquidated damages as provided by 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

112.     Plaintiffs, on behalf of themselves and the Class, seek recovery of attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. § 216(b).

113.     In pertinent part, 29 U.S.C. § 211(c) provides as follows:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

114.     Under 29 C.F.R. §§ 516.2 and 825.500, every employer must maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

115.   To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs and the Class comprehensive statements showing the hours they worked during the relevant time period, Defendants also violated the aforementioned laws causing Plaintiffs and the Class damages.

116.   When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds*,  is controlling.  That rule states,

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

117.   The Supreme Court set forth this test to avoid incentivizing an employer's failure to keep proper records in conformity with its statutory duty, which would enable the employer to reap the benefits of the employees' labors without paying the proper compensation required by the FLSA.  Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act."  *Id.*

118.   Based on the foregoing, Plaintiffs and the Class seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any improper pay deductions, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs,

penalties, and other relief allowed by law.

## COUNT II – VIOLATION OF THE FLSA
### (Failure to Pay Overtime Wages)
### (Against all Defendants)

119.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein**.**

120.    This claim arises out of Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for failure to pay Plaintiffs and members of the Class the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek, 29 U.S.C. § 207, to which they were entitled.

121.    At all times relevant to this action, Defendants were "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

122.    At all times relevant to this action, Plaintiffs and the Class members were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

123.    At relevant times, all Defendants jointly employed Plaintiffs and all similarly situated Class members within the meaning of the FLSA.

124.    Defendants engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

125.    Plaintiffs and the Class members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

126.    The position of roadside assistance technician is not exempt from the FLSA.

127.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs

and the Class members to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

128.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

129.    29 U.S.C. § 207(a)(2)(c) provides in pertinent part:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

130.    Defendants violated the FLSA by failing to pay Plaintiffs and the Class members the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

131.    Upon information and belief, Defendants have corporate policies of evading overtime pay for its workers including its roadside assistance technicians.

132.    Defendants' violations of the FLSA were knowing and willful.

133.    By failing to compensate their roadside service technicians at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a).  All similarly situated employees are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate.  This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all employees who have worked or are working for Defendants in the

same or similar position as Plaintiffs.

134.    The FLSA, 29 U.S.C. 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

135.    As a result of the foregoing conduct, Plaintiffs seek on behalf of themselves and all members of the Class unpaid overtime wages at the required legal rate for all working hours during the relevant time period, all other damages, attorneys' fees and costs, restitution, liquidated damages, penalties, injunctive relief, interest calculated at the highest legal rate, and all other relief allowed by law.

**COUNT III – UNJUST ENRICHMENT/QUANTUM MERUIT**
**(Improper and Unlawful Pay Deductions)**
**(Against All Defendants)**

136.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein**.**

137.    Plaintiffs and Class members provided valuable labor to Defendants that inured to Defendants' benefit and for which they were not compensated.

138.    Through their work for Defendants, Plaintiffs and Class members provided a material benefit to Defendants.

139.    Defendants received and accepted the above-referenced services and enjoyed the benefits therefrom.

140.    Pursuant to Defendants' policies, Plaintiffs and others similarly situated routinely suffered improper pay deductions to account for: (1) alleged damage to customer vehicles; (2) alleged mileage miscalculations; and (3) alleged insurer refusal to pay mileage invoices exceeding certain distances.

141.     Defendants instituted these policies so that they could retain the material benefit of the work performed by Plaintiffs and Class members without providing them appropriate compensation.

142.     Defendants were unjustly enriched by the retention of monies that should have been paid to Plaintiffs and Class members in exchange for their services but were, instead, improperly and unlawfully deducted from the pay of Plaintiffs and the Class members as a result of Defendants' illegal policies.

143.     As result of Defendants' unjust enrichment, Plaintiffs and the Class members did not receive fair compensation for the work they performed and Defendants were unjustly enriched in an amount to be determined.

**COUNT IV - VIOLATION OF THE KANSAS MINIMUM WAGE ACT**
**K.S.A. § 44-1200, *et seq.*; K.S.A. § 44-319; Kan. Admin. Regs. § 49-20-1**
**(Against All Defendants)**

144.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein**.**

145.     The above-described actions of defendant violated the rights of Named Plaintiffs and the Kansas Class under Kansas law for which they are entitled to relief.

146.     Certification of a Kansas Class under Rule 23 is appropriate.

**COUNT V – VIOLATION OF THE KENTUCKY MINIMUM WAGE LAW**
**Ky. Rev. Stat. Ann. § 337.010, *et seq.*; Ky. Rev. Stat. Ann. § 337.060**
**(Against All Defendants)**

147.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

148.     The above-described actions of defendant violated the rights of Named Plaintiffs and the Kentucky Class under Kentucky law for which they are entitled to relief.

149.     Certification of a Kentucky Class under Rule 23 is appropriate.

**COUNT VI - VIOLATION OF THE MARYLAND WAGE AND HOUR LAW**
**Md. Code. Ann. Lab. & Empl., §§ 3-401, *et seq.*; Md. Code. Ann. Lab. & Empl. § 3-503**
**(Against All Defendants)**

150.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

151.     The above-described actions of defendant violated the rights of Named Plaintiffs and the Maryland Class under Maryland law for which they are entitled to relief.

152.     Certification of a Maryland Class under Rule 23 is appropriate.

**COUNT VII - VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW**
**N.J. Stat. Ann. § 34:11-1, *et. seq.*; N.J. Stat. Ann. § 34:11-4.4; N.J. Admin. Code Tit. 12, § 55-2.2**
**(Against All Defendants)**

153.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

154.     The above-described actions of defendant violated the rights of Named Plaintiffs and the New Jersey Class under New Jersey law for which they are entitled to relief.

155.     Certification of a New Jersey Class under Rule 23 is appropriate.

**COUNT VIII – VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR LAW**
**N.C. Gen. Stat. § 95-25.1, *et. seq.*; N.C. Gen. Stat. § 95-25.8; 13 N.C. Admin. Code § 12.0305**
**(Against All Defendants)**

156.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

157.     The above-described actions of defendant violated the rights of Named Plaintiffs and the North Carolina Class under North Carolina law for which they are entitled to relief.

158.     Certification of a North Carolina Class under Rule 23 is appropriate.

### COUNT IX - VIOLATION OF THE OHIO MINIMUM WAGE LAWS
### ORC ANN. § 4111.01, *et seq.*
### (Against All Defendants)

159.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

160.     The above-described actions of defendant violated the rights of Named Plaintiffs and the Ohio Class under Ohio law for which they are entitled to relief.

161.     Certification of an Ohio Class under Rule 23 is appropriate.

### COUNT X - VIOLATION OF THE
### COUNT XVI - VIOLATION OF THE WEST VIRGINIA MINIMUM WAGE LAW
### W. Va. Code § 21-5C-3(a), *et seq.*; W. Va. Code §§ 21-5-1; 21-5-3; 21-5-4; 21-5-9
### (Against All Defendants)

162.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

163.     The above-described actions of defendant violated the rights of Named Plaintiffs and the West Virginia Class under West Virginia law for which they are entitled to relief.

164.     Certification of a West Virginia Class under Rule 23 is appropriate.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

      a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

      b.     Certifying classes in Kansas, Kentucky, Maryland, New Jersey, North Carolina, Ohio, and West Virginia in accordance with Fed. R. Civ. P. 23(b)(3) with respect to the claims set forth above;

      c.     Designating Named Plaintiffs as Class Representatives;

      d.     Declaring that Defendants willfully violated their obligations under the FLSA and its attendant regulations as set forth above;

      e.     Declaring that Defendants willfully violated the Kansas, Kentucky, Maryland, New Jersey, North Carolina, Ohio, and West Virginia wage and

hour laws;

f.      Certifying this matter to proceed as a class action;

g.      Designating Sommers Schwartz, P.C. and Johnson Becker, PLLC as Co-Lead Counsel for Plaintiffs and the Class members on their Collective Action and Rule 23 Class Action claims;

h.      Awarding Plaintiffs and the Class members all available compensatory damages and punitive damages, including, *inter alia*, all unpaid wages owed under applicable law;

i.      Granting judgment in favor of Plaintiffs and the Class members and against Defendant and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiffs and Class members' regular rate multiplied by all hours that Plaintiffs and Class members worked in excess of forty (40) hours per week for the past three years;

j.      Awarding liquidated damages to Plaintiffs and Class members in an amount equal to the amount of unpaid overtime found owing to them;

k.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

l.      Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.      Such further relief as this court deems appropriate.

## **JURY DEMAND**

Plaintiff reserves his right to and hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Jesse L. Young*
Jason J. Thompson  *Admitted Pro Hac Vice*
Kevin J. Stoops  *Admitted Pro Hac Vice*
Jesse L. Young  *Admitted Pro Hac Vice*
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com

Timothy J. Becker
MN Bar No. 256663
Jacob R. Rusch
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*

Lawrence L. Jones
JONES HOWARD, PLC
Marion E. Taylor Building
312 South Fourth St., Sixth Floor
Louisville, Kentucky  40202
(502) 882-6000
larry@jonesward.com

Dated:  October 10, 2014                 *Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on October 10, 2014, I electronically filed the forgoing paper with the Clerk

of the Court using the ECF system, which will send notification of such filing to all counsel of

record.

/s/ Veronica L. Stewart
vstewart@sommerspc.com

**Jack Rabbit USA - Roadside Assistance Provider
is on Facebook.**

**(Joined Facebook October 1, 2010)**

**Follow us on Twitter also @JackRabbitUSA**

# EXHIBIT A

https://www.facebook.com/pages/Jack-Rabbit-USA-Roadside-Assistance-Provider/161625103864730

Find a Location: Jack Rabbit USA, LLC –

Nationwide Roadside Service

| | |
|---|---|
| Alexandria, LA | Biloxi, MS |
| Amarillo, TX | Bowling Green, KY |
| Ashland, KY | Charleston, SC |
| Baltimore, MD | Charleston, WV |
| Beaumont, TX | |

find a link now to our website if you Google "Lockouts"

| | |
|---|---|
| Louisville, KY | Cincinnati, OH |
| Pensacola, FL | San Antonio, TX |
| Baltimore MD | Richmond, VA |

https://www.facebook.com/notes/jack-rabbit-usa-roadside-assistance-provider/our-locations/154816231216079

Our Locations - October 1, 2010 at 10:40am

We are in over 50 locations across the United States. We provide tire changing, jump starting, fuel delivery, and lockout services to these cities:

Maryland-Baltimore/West Ocean

Texas-Odessa/Midland/Lubbock/San Antonio/Amarillo/Beaumont/Tyler

Florida- Pensacola/Tallahassee/Panama City

Louisiana- Houma/Shreveport/Monroe/Hammond/Lake Charles

New York- Watertown

Kansas- Topeka/Lawrence

Alabama- Huntsville/Montgomery/Mobile

California- Modesto/Stockton

Kentucky- Louisville/Lexington/Elizabethtown/Bowling Green/Ashland

Mississippi- Jackson/Biloxi

Tennessee- Memphis/Nashville/Chattanooga/Knoxville

Indiana- Evansville

Arkansas- Little Rock/Conway

West Virginia- Huntington/Charleston

Virginia- Richmond/Virginia Beach/Winchester/Norfolk

Ohio- Cincinnatti

North Carolina- Charlotte/Greensboro/Waxhaw/Winston-Salem/Raleigh

South Carolina- Greenville/Rock Hill/Charleston

# EXHIBIT B

## INDEPENDENT CONTRACTOR AGREEMENT

FOR VALUABLE CONSIDERATION, JACK RABBIT SERVICES (hereinafter referred to as "Company") and _Richard C. Ross_ (hereinafter referred to as "Contractor") agree as follows:

1.        Contractor agrees to perform roadside assistance jobs within the following area _Biloxi - Gulfport_ (hereafter referred to as "standard coverage area") pursuant to the contract terms herein set forth.  The jobs to be performed shall include vehicle unlocking, tire changes/repairs, jump starts, fuel delivery and calling for wrecker service, if necessary, as may be requested by Customer.

2.        Contractor shall have no obligation to accept or perform any job(s) requested but agrees to be available to accept roadside assistance jobs from dispatchers on such schedules and times as the Contractor determines and Contractor shall provide notice to company of Contractor's schedule on Friday of each week for the following week.  Contractor shall perform all jobs accepted in a workmanlike, professional, safe, competent and reasonable manner.  Contractor hereby warrants and guarantees all work performed hereunder to be of the highest quality and utmost professionalism.  Contractor shall be alcohol and drug free during performance of jobs and shall not be impaired by any substance. Contractor shall be courteous and polite to all roadside assistance customers and request of the customer for assessment of Contractor's service quality and request report of same to Company.  Contractor acknowledges that customer reports and complaints relative to its performance will be considered in continuing this Contract.   Contractor shall obtain and submit to Company background, criminal, traffic and credit reports, at its expense, on Contractor and any employees in satisfactory form and content to Company. Contractor may elect to authorize and permit Company to conduct background investigation and obtain such required reports.

3.        Contractor shall, at Contractor's own expense, undergo and obtain thorough an extensive roadside assistance training and education and the Contractor shall participate in continuing education/training in this area.  If the Contractor elects, Contractor may obtain this training and education via programs and training sponsored by Company as may be made available by Company.

4.        Contractor shall purchase and maintain, at Contractor's expense, uniforms similar to all other contractors in Contractor's standard coverage area.  Contractor must display on his/her shirt his/her name and that he/she is an "independent contractor for Jack Rabbit Services, LLC".  All uniforms and clothing must be clean and well maintained at all times.

5.        Contractor shall use its own vehicle in the performance of any jobs accepted by Contractor and shall maintain, at Contractor's expense, liability insurance (motor vehicle and general) which provides coverage against bodily injury and property damage loss while performing roadside services under this Agreement with such limits as comply with all laws requiring minimum limits.  Contractor, at its own expense, shall obtain, maintain and display, on his vehicle, while performing roadside services under this Contract, a magnetic sign prominently displaying "Independent Contractor for Jack Rabbit Services, LLC".

6.        Contractor agrees to acquire and maintain all tools, apparel and signage necessary to complete the service calls he/she accepts. Company will provide Contractor with information on suggested tools and items and where the Contractor may acquire them upon request.

Initials: _____

7.      Company agrees to make arrangements for telephone dispatch services

for receiving calls for needed roadside service in Contractor's standard coverage area and will arrange dispatchers to

telephone contractor or other contractor in Contractor's standard coverage area to request performance of a roadside

service job. Jobs will be made available by dispatchers to Contractor at such frequency as company may determine in

its absolute discretion. Contractor shall have no entitlement to any particular job(s) within the Contractor's standard

coverage area, or a number or set frequency of jobs.

8.      Contractor shall provide and maintain a cell phone, at its own expense, which shall make

Contractor available for contact by dispatchers to receive requests to perform roadside service jobs(s) availability

reports, and for use by Contractor to communicate with dispatchers and to communicate with customers. All cell

phone usage charges (including text messages) shall be the expense of Contractor. Contractor shall not send or read

text messages while operating a moving vehicle. Contractor shall comply with all laws relating to cell phone usage

while operating a motor vehicle and shall only receive or make cell phone calls when it is safe to legally do so.

Contractor shall be available by cell phone to receive calls from dispatcher during Contractor's scheduled time.

9.      Company will pay Contractor for road service jobs accepted by Contractor only if the service

job was satisfactorily performed. The contract price which Contractor shall be paid upon satisfactory completion and

timely submission of invoice with supporting completed job service run report. The contract price to be paid based on

the following: $ *13.00* per service job/run completed; $ *6.00* for all gone on arrival jobs (GOA)

that can be verified from the designated roadside service benefit provider. For service jobs/runs outside Contractor's

standard coverage area, Contractor shall be paid a sum equal to $ *13.00* plus $1.00 per mile for each mile

traveled outside the standard coverage area, unless otherwise agreed to and made in writing between the parties.

10.     Company shall make all decisions on service job fee splits between

Contractors or pay entitlement and its determination shall be binding and final.

11.     Contractor shall be solely responsible for all damages/injuries caused

by him to the customer or his/her vehicle while performing service and he shall indemnify and hold harmless

Company from all liability and claims which may arise or result from his job service performance. Contractor shall

resolve and defend, at its own expense, all damage and injury claims. Contractor shall maintain a general liability

insurance policy insuring against injury and property damage loss caused by Contractor's negligence while

performing jobs hereunder with minimum limits of $100,000.00.

12.     Contractor acknowledges that he is an independent contractor and not

an agent or employee of Company. Contractor's stationery, business cards, invoices and

other business records shall prominently display that Contractor is an independent contractor. Contractor shall not,

and shall have no authority to, represent, directly or indirectly, to any customer, company, person or business that

Contractor is acting as an agent or employee of Company. Contractor shall have absolutely no authority to bind

company in any matter or in any manner.

13.     Contractor agrees, and acknowledges, that Contractor is conducting a

business separate and distinct from Company. Contractor shall have the sole and exclusive obligation to pay income

and occupational taxes on any income which Contractor receives from Company for jobs performed hereunder.

Initials: _____

Company shall have no obligation to withhold from sums to be paid to Contractor for the payment for taxes or otherwise.  Company is directed by Contractor not to withhold taxes, provide unemployment insurance contributions, withhold or pay FICA taxes, provide or pay workers' compensation coverage, or make/withhold for social security taxes or for any other charge, expense or tax.  Company shall have no responsibility to withhold or pay such taxes, fees or benefits.  Contractor assumes all responsibility to pay all such required taxes, fees and obligations and hereby releases Company from all claims which may arise or result from the non-payment of such taxes, fees,  and benefits not paid by Contractor.   Contractor shall timely file and register for federal, state and local business licenses and tax numbers, and, it shall promptly file and pay all tax and other returns, fees and taxes and provide such information as Company may request in order that Contractor can be sent a 1099 statement.

      14.     Contractor agrees and acknowledges that Contractor shall not receive, or be available for, any employee type of benefits (i.e. medical insurance, vacation or paid unemployment insurance, sick days or pay, no minimum salary wage or income guarantee,  disability or workers' compensation insurance, or any other type of benefit).  Contractor shall have no minimum or guaranteed number of jobs/runs to be assigned to Contractor or income to be made to Contractor.  Similarly, Contractor is not limited in the amount which he may be paid for jobs/performed under this Contract. Company may assign jobs to Contractors as it may determine in its absolute discretion.  Contractor shall pay and be solely responsible for all of its travel, transportation, auto and entertainment related expenses which Contractor may incur in connection with the performance under this Contract.

      15.     Contractor shall deliver to Company invoices to Company for all jobs/runs in a timely manner and no later than seven (7) days after the job/run has been performed.  The invoice(s) will not be paid unless a signed customer service report is received for the corresponding invoice.  If Contractor fails to deliver invoices within seven (7) days from date of job/run, the Company shall have no obligation to pay such invoice and the Contractor hereby releases claims for payment for said jobs/runs. Please note that Jack Rabbit Services has a "Sunset Claims Policy". This policy states that Jack Rabbit Services, nor its clients or customers, will not assume any liability to pay any invoices in line for payment that have been open in excess of 30 days from the Date of Service.

      16.     Contractor shall cooperate fully and as requested by Company in the defense and/or response to any claim, litigation, governmental action, customer disputes and/or roadside assistance benefit provider disputes.  Company shall have the exclusive right to make decisions relative to claims or disputes in which it may be involved relative to Contractor's performance under this Contract.  This shall include decisions to mediate, file, settle or litigate claims.  Contractor agrees to indemnify Company from liability on all claims, suits and liabilities to which Company may be exposed or subjected to as a result of Contractor's actions and shall pay all costs and attorney fees incurred by Company.

      17.     Unless otherwise agreed in writing with Company, Contractor shall not perform work, services, job or contract for/with any other roadside assistance provider company during the period that this Contract is in effect or during which time Contractor is accepting or performing jobs/services/runs for Company under this Contract. In the event  Contractor breaches this term, Contractor shall be liable to Company for liquidated damages in the sum of $5,000.00.

Initials: _____

18.    All company trade secrets and proprietary information received by Contractor shall be confidential and shall not be disclosed to any third party by Contractor.

19.    This Agreement contains the complete agreement of the parties.  No oral representations, agreement or understanding shall be binding and is void.  This agreement may not be modified, changed or amended except by written agreement signed by both parties.  The parties acknowledge that neither of them have relied on any representations not contained in this agreement.  Each party acknowledges that they have read and understood this agreement and have had the opportunity to have it reviewed by such professionals as they may desire.  Contractor shall comply with all laws and regulations in performance of his jobs and service runs.

20.    Either party may terminate this Contract at any time and for any reason by delivering to the other party seven (7) days advance written notice of contract termination.   All notices hereunder shall be delivered to Company at  3044 Bardstown Rd. #229 Louisville, KY 40205  and Contractor at
917 E 2nd St. Pess Christian  MS  39571

21.    This Agreement shall be construed under the laws of  Kentucky .
If any provision of this Agreement shall be held invalid, the validity of all other provisions shall not be affected.

22.    In the event of dispute or claims between the parties arise, all such disputes and claims shall be first mediated and, if mediation is unsuccessful, then all issues shall be submitted to binding arbitration.  Company shall have the right to select the mediator and arbitrator if the parties are unable to agree on the selection.

Richard C. Ross

**Contractor Name (PRINT)**

JACK RABBIT SERVICES, LLC

Agent/Member

_RR_

**Contractor Signature**

Mobile Phone # 228-261-9775

SSN or EIN 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

Address 917 E 2nd Street

City Pess Christian    State MS    Zip 39571

7-26-13

DATE

Mobile Provider Virgin

Email Address rossrich9622@yahoo.com

**EMERGENCY CONTACTS:**

| Phone # | | Name | Relation |
|---|---|---|---|
| Ann Ross | (228) | 222-3768 | wife |
| Jon Ross | (228) | 234-6830 | A Son |
| Mike Ross | (228) | 861-6322 | Son |