UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RICHARD ROSS, ET AL.                                                                                  Plaintiffs,

v.                                                                       Civil Action No. 3:14-cv-00044-DJH

JACK RABBIT SERVICES, LLC, ET AL.                                                              Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiffs' motion for a protective order against class-wide discovery. (Docket Nos. 77, 84, 86). For the reasons discussed below, Plaintiffs' motion is GRANTED IN PART.

## BACKGROUND

Plaintiffs, current and former roadside technicians, brought this action for unpaid wages pursuant to the Fair Labor Standards Act (FLSA), challenging the Defendants' policy and practice of classifying workers as independent contractors. Defendants, Jack Rabbit Services, LLC, Jack Rabbit USA, LLC, and recently-added 888 Dispatching Services, LLC, and certain managing members of the aforementioned, are in the business of providing roadside assistance services, including changing tires, providing jump-starts, and delivering fuel. Defendants serve roughly fifty locations across numerous states and, according to Plaintiffs, employ or have employed over 1,000 roadside assistance technicians during the past three years.

Plaintiffs allege that Defendants intentionally misclassified class members as independent contractors, rather than employees-in-fact, in an effort to circumvent the minimum wage and overtime provisions of the FLSA. Plaintiffs claim that class members are similarly situated in that they were subject to similar pay structures, had similar classification statuses and job duties,

1

and worked a similar number of hours. This Court conditionally certified a class, defined as "[a]ll roadside assistance technicians who worked for Defendants and were classified by Defendants as independent contractors at any time in the past three years." (D.N. 28). Notice was sent to 992 potential class members. At the close of the opt-in period, 236 individuals from 29 different states had joined the class.

Defendant Jack Rabbit Services initially sent discovery requests to named Plaintiff Richard Ross and all 236 opt-in Plaintiffs. These discovery requests consisted of "20 interrogatories and 15 requests to produce documents." (D.N. 77). While Plaintiff Richard Ross has answered the initial discovery requests, Plaintiffs seek a protective order against class-wide discovery. Plaintiffs claim that individualized discovery would be unduly burdensome, would drastically increase litigation costs, and would serve no valid purpose. Instead, Plaintiffs propose that a random representative sample of 10% of the opt-in class answer the discovery requests. Defendants responded proposing that all opt-in Plaintiffs answer a shortened form of discovery, which they call a "simple questionnaire," consisting of five requests for admission, two interrogatories, and one request for production of documents. (D.N. 84). Plaintiffs object to Defendants' proposal contending that it is still burdensome and, notwithstanding Defendants' claim of simplicity, contains "legal traps" that would require the assistance of counsel. (D.N. 86).[1]

## STANDARD

Generally, courts have broad discretionary authority to determine the scope and method of discovery based upon the circumstances of each case. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Specifically, a court must limit discovery if it determines that "the

---

[1] The Plaintiffs initially raised a second issue concerning the scheduling of depositions of opt-in Plaintiffs. However, the parties have resolved that matter internally. (D.N. 84, 86).

2

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or if] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## DISCUSSION

It is common in FLSA collective actions for disputes to arise over the proper scope of discovery of opt-in class members, with plaintiffs often seeking limited representative discovery, and defendants urging more expansive individualized discovery. *See Craig v. Rite Aid Corp.*, No. 08-CV-2317, 2011 WL 9686065, at *3 (M.D. Pa. Feb. 7, 2011). The federal courts have adopted two primary lines of cases regarding the scope of discovery in these actions. *Cranney v. Carriage Servs., Inc.*, No. 07-CV-01587, 2008 WL 2457912, at *2 (D. Nev. June 16, 2008). Some courts have treated opt-in plaintiffs as ordinary party plaintiffs subject to the full range of discovery and have permitted defendants to seek discovery from all class members. *See, e.g.*, *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (requiring all 306 opt-in plaintiffs to respond to defendant's written discovery requests); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 448 (S.D.N.Y. 1995) (mandating that all 162 opt-in plaintiffs respond to written discovery); *Renfro v. Spartan Computer Servs., Inc.*, No. 06-2284, 2008 WL 474253, at *2 (D. Kan. Feb. 19, 2008) (subjecting 136 opt-in plaintiffs to discovery); *Scovil v. FedEx Ground Package Sys. Inc.*, No. 10-CV-00515, 2011 WL 5526033, at *4 (D. Me. Nov. 14, 2011) (allowing written discovery for all 30 opt-in plaintiffs). The Court notes that these cases have typically involved smaller classes of plaintiffs, where the costs and burdens of discovery were less significant.

3

Other courts have found that the same standards governing discovery in Rule 23 class actions should be applied to conditionally certified FLSA actions. *Cranney*, 2008 WL 2457912, at *2. These courts have limited individualized discovery, reasoning that such discovery would undermine the purpose and usefulness of collective actions. *Wellens v. Daiichi Sankyo Inc.*, No. C-13-00581, 2014 WL 7385990, at *3 (N.D. Cal. Dec. 29, 2014). Instead, these courts require that only a representative sampling of opt-in plaintiffs respond to discovery. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 07-CV-00430, 2010 WL 6766418, at *7 (S.D. Ohio Aug. 17, 2010) (rejecting defendants' request for full discovery from all 106 opt-in plaintiffs and allowing written discovery from only a representative sample); *Cranney*, 2008 WL 2457912, at *5 (limiting discovery to 10% of roughly 300 opt-in plaintiffs); *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) (limiting discovery to a statistically significant representative sample of the 1,500 opt-in plaintiffs). Accordingly, it is in this Court's discretion to determine which line of cases is most applicable to the specific facts of the instant case.

This Court finds the latter line of cases to be applicable here. The Court has considered a variety of factors in determining how much discovery Defendants should be permitted to conduct at this juncture. First, the Court has considered the size of the class. As class size increases, courts are generally less likely to require all plaintiffs to respond to discovery. *See supra*. This makes practical sense as the logistics and efforts to arrange for plaintiffs to respond to discovery requests increase considerably as class size swells. While exceptions can be found at both ends of the spectrum,[2] courts are especially likely to limit discovery where the costs and burdens are

---

[2] The Defendants have cited only one case involving a class larger than that at issue in this matter in support of their proposition that all opt-in Plaintiffs should be subjected to written discovery. D.N. 84, at 5 (citing *Coldiron*, 2004 WL 2601180). However, *Coldiron* can be distinguished from the instant case. In *Coldiron*, involving a class of 306 opt-in plaintiffs, it was not clear where the plaintiffs were located geographically or how class-wide discovery would

4

significant. In this case, the 236 opt-in plaintiffs represent a moderately sized class, but similar to those in which courts have previously limited discovery, and the geographic diversity of its members would significantly add to both the burden and cost of responding to individual discovery requests. *See, e.g., Gentrup*, 2010 WL 6766418, at *7 (limiting discovery for a class of 106 opt-in plaintiffs spread across 20 states); *Wellens*, 2014 WL 7385990, at *3 (limiting discovery after considering that the class of 248 plaintiffs was dispersed among 25 different states).

The Court has also considered the type of discovery sought. Jack Rabbit proposes having all 236 opt-in plaintiffs answer a shortened form of discovery consisting of five requests for admissions, two interrogatories, and one request for production of documents. Plaintiffs object to this "simple questionnaire," arguing that it is "rife with legal traps," will cause undue burden, and will be improperly used by Jack Rabbit to dismiss non-responsive plaintiffs. (D.N. 86). The Court finds that the shortened discovery, while significantly narrowed from Jack Rabbit's initial discovery requests, contains some of the flaws emphasized by Plaintiffs. For example, Jack Rabbit claims that the shortened discovery is written in "plain language and require[s] no assistance from an attorney to complete." (D.N. 84). However, the shortened request contains several legal terms (including "due diligence" and "unqualified answer") and several other terms which, while familiar to those in the legal profession, are rarely used in everyday speech (such as "hereinafter," "propounded," and "negative repercussions"). Furthermore, when courts have allowed defendants to submit discovery questionnaires to an entire class, the questions have used plainer language than that proposed by Defendants and could be answered without the assistance

---

burden the plaintiffs. In fact, the court indicated that it might have limited discovery had the plaintiffs made specific objections rather than an "all or nothing" blanket objection to discovery. *See Coldiron*, 2004 WL 2601180, at *2.

of counsel. *E.g.*, *Bonds v. GMS Mine Repair & Maint., Inc.*, No. 13-cv-01217, 2014 WL 6682475, at *3 (W.D. Pa. Nov. 25, 2014) (allowing questionnaire of five simple inquiries asking such basic questions as when plaintiffs worked for a particular employer and where plaintiffs resided while working for that employer).

Moreover, Defendants' shortened discovery requests ask for tax returns. While individual tax returns are not inherently privileged, we will order the disclosure of tax information only when necessary, and with caution. *See, e.g.*, *Ruth v. Superior Consultant Holdings Corp.*, No. 99-cv-71190, 2000 WL 1769576, at *2 (E.D. Mich. Oct. 16, 2000); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Thus, based on the type of discovery sought, it would be difficult for all opt-in Plaintiffs to effectively interpret and respond to the shortened requests without the assistance of counsel, and the resulting burden on class members and their counsel to facilitate and review responses to nearly two thousand discovery requests would outweigh the potential benefit to the Defendants.

Finally, the Court notes that other courts have sanctioned representative sampling even when a defendant intends to later move for class decertification, a procedural move common to most FLSA collective actions. *See, e.g.*, *Lowe's Home Cntrs.*, 236 F.R.D. at 357-58. At this stage, the Court finds that limiting discovery to a significant representative sampling will both minimize the burden on Plaintiffs and their counsel while still affording the Defendants a reasonable opportunity to explore and establish an evidentiary basis for their defenses, including any later decertification proceedings. However, if upon completion of representative discovery it becomes clear that the Plaintiffs' circumstances are so distinct as to make representative discovery impracticable, or if Defendants can demonstrate to the Court that broader discovery is appropriate and necessary, the Defendants may so move.

Accordingly, the Court finds that representative discovery is appropriate here given the purported similarity among class members, the size of the class, and the burdensome nature of discovery upon 236 Plaintiffs in 29 different states.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiffs' motion for protective order is GRANTED IN PART. The parties shall participate in discovery sampling and the Defendants shall, in addition to all named Plaintiffs, randomly select 24 class members, representing a 10% sampling of opt-in Plaintiffs, who must respond to Defendants' initial discovery requests.

**IT IS FURTHER ORDERED** that Defendants shall be permitted to take the depositions of named Plaintiffs in Louisville, Kentucky. To the extent the named Plaintiffs must travel for a deposition, Plaintiffs must travel at their own expense. Any in-person deposition of opt-in Plaintiffs residing outside of this Court's jurisdiction shall take place within the city and state where each opt-in Plaintiff resides at the time of the deposition.

IT IS SO ORDERED.

April 7, 2015

**David J. Hale, Judge**
**United States District Court**